BOEHM, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 15—June 21, 1926.*

*Automobiles: Failure of driver to stop after injuring person: Evidence: Sufficiency: Criminal law: Failure to ask accused if there is any reason why sentence should not be pronounced.*

1. In a prosecution under sec. 343.181, Stats., for failing to stop after injuring a person with an automobile, admissions of the defendant that he knew his automobile had come in contact with a pedestrian while it was going at a high rate of speed are *held* to disclose a duty on the defendant to stop and ascertain whether the person struck was injured. p. 611.
2. Sec. 343.181, Stats., providing that one violating its provisions shall be guilty of a felony, authorizes the imprisonment of a convicted defendant in the state prison, in view of sec. 353.31, providing that a "felony" shall mean an offense punishable in the state prison. pp. 611, 612.
3. The failure of the court, before pronouncing sentence, to ask defendant if he had anything to say why sentence should not be pronounced, is *held* not prejudicial error. p. 613.

ERROR to review a judgment of the municipal court of Outagamie county: THEODORE BERG, Judge. *Affirmed.*

Plaintiff in error (hereinafter called the defendant) was convicted of failing to stop and give assistance, his name and address, to one Benjamin Beschta, whom he had run down and injured by an automobile. It appears that

Beschta had just alighted from a street car going east on North street in the city of Appleton. He passed to the rear of the street car towards the north curb line of the street. Just as he cleared the street car he was struck and thrown to the pavement by an automobile driven west on North street by defendant. Defendant was driving at a very high rate of speed; according to his own testimony, between twenty and twenty-five miles per hour, and, according to other testimony, at a much greater speed. He did not stop, but proceeded on his way at the same rate of speed, disregarding an arterial stop sign within a block from the place of the accident. Upon the verdict of the jury finding him guilty he was sentenced to imprisonment for one year in the state prison.

For the plaintiff in error the cause was submitted on the brief of *Albert H. Krugmeier* and *Joseph Witmer,* both of Appleton.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *John A. Lonsdorf,* district attorney of Outagamie county, and oral argument by *Mr. Lonsdorf.*

OWEN, J. Defendant contends that the evidence is insufficient to support the verdict of guilty because, in order to be guilty of the offense described in sec. 343.181, Stats., he must be charged with knowledge of the fact that he has caused injury to some one. He makes the contention here that he did not know that he had injured Beschta. His own testimony conclusively refutes that contention. He testified as follows:

"As I came along the street car going west I passed the street car right close to the intersection. Too late to avoid the accident this man came across the street with his head down putting something in an envelope; he walked right into the side of my car, the front fender. I got excited.

In the first place I didn't think I hurt the man. I thought I just brushed him aside, and got excited on top of that and kept on going."

According to his own admissions he knew that his automobile, going at a very high rate of speed, had come in contact with Beschta. He had no right to assume that no injury resulted to Beschta by reason of such contact. It was his duty to stop and ascertain whether Beschta was injured.

Error is also assigned because it is claimed that sec. 343.181 does not authorize imprisonment in the state prison. That section provides that any person violating its provisions "shall be guilty of a felony, punishable by a fine of not more than one thousand dollars, or by imprisonment for a period of not less than three months, nor more than two years." It will be noted that the provision is silent as to where the imprisonment shall be. This is the basis for the contention that the section does not authorize imprisonment in the state prison. It does specifically provide, however, that one who violates the provisions "shall be guilty of a felony." Sec. 353.31 provides that the term "felony," when used in any statute, shall be construed to mean an offense for which the offender on conviction shall be liable by law to be punished by imprisonment in the state prison. This is a legislative definition of the term "felony." When the legislature provides that an offense shall constitute a felony and authorizes imprisonment for a maximum of two years, can there be any doubt that the legislature contemplated that such imprisonment shall be in the state prison? It would be rather anomalous to hold that while a felony constitutes an offense punishable by imprisonment in the state prison, one convicted of an offense which the legislature declares to be a felony cannot be imprisoned in the state prison unless the statute creating the offense and the penalty specifically declares that the imprisonment shall be in the state prison. In view of the statutory definition

of a felony, it would seem to inevitably follow that an offense declared by statute to constitute a felony implies imprisonment in the state prison. We hold that the sentence was authorized.

Error is next assigned because the court, before pronouncing sentence, did not ask the defendant if he had anything to say why sentence should not be pronounced. Such failure was held to constitute reversible error in *French v. State,* 85 Wis. 400, 55 N. W. 566; and it was said to be something more than a mere formality in *In re Carlson,* 176 Wis. 538, 186 N. W. 722. Upon mature reflection it seems utterly hopeless to attempt to state a reason for regarding such a failure as prejudicial error. The practice or custom seems to have originated in England at a time when defendants charged with certain crimes were not represented by counsel. The practice has obtained quite generally in this country, but it seems to have nothing more to support it than its traditionary existence. It is a mere custom and nothing else. In this day, when defendants in criminal cases are represented by counsel,—by counsel furnished by the State if they are unable to procure them,—who understand their legal rights and exert every effort to preserve them, who move in arrest of judgment and for new trials, and perfect their appeals to this court, how can it be said that the mere omission of the traditionary question, "Have you anything to say why judgment should not be pronounced?" constitutes anything like a substantial right? The proceeding has been characterized as "ridiculously idle" (*Warner v. State,* 56 N. J. L. 686, 29 Atl. 505) ; as "a most absurd, frivolous, and idle ceremony" (*State v. Hoyt,* 47 Conn. 518) ; and in *People v. Palmer,* 105 Mich. 568, 63 N. W. 656, it is said: "Whatever good purpose this practice may have served in England when parties charged with crime were not allowed counsel, it is now a mere idle ceremony." It is time that the law be rid of this technicality, which rests only in tradition and is barren of any

substantial benefit to the defendant. We hold that failure to propound the question to the defendant did not constitute prejudicial or reversible error. We do not condemn the custom, which generally prevails with the trial judges of this state. It is quite possible that in response to this question the trial court often obtains information which is of aid in fixing a just and intelligent sentence. But it is just as possible also that courts are often misled and imposed upon by the crafty criminal who understands the frailties not only of human nature in general but the peculiar weaknesses of individual men whose attitude toward life, their foibles and fancies are of more or less concern to him who is about to be sentenced. We discover no error, and the sentence and judgment must be affirmed.

*By the Court.*—Judgment affirmed.